**PACIFIC MOLASSES COMPANY, a corporation, and James M. Ferguson, individually and as an officer of said corporation, Petitioners,**

v.

**FEDERAL TRADE COMMISSION,**
Respondent.

No. 21752.

United States Court of Appeals
Fifth Circuit.

Jan. 24, 1966.

Christopher M. Jenks, San Francisco, Cal., Wm. H. Orrick, Jr., John E. Shea, Washington, D. C., William D. McKee, Donald A. Slichter, Orrick, Dahlquist, Herrington & Sutcliffe, San Francisco, Cal., for petitioners.

J. B. Truly, Asst. Gen. Counsel, F. T. C., Louis Russell Harding, Atty., F. T. C., Washington, D. C., James McI. Henderson, General Counsel, for respondent.

Before JONES, Senior Judge,* and GEWIN and BELL, Circuit Judges.

JONES, Senior Judge:

This case is before the court on petition to review and set aside a Federal Trade Commission order directing petitioners to cease and desist from engaging in certain discriminatory pricing practices in the sale of "blackstrap" molasses; the order declaring that these practices are in violation of Sec. 2(a) of the Clayton Act, as amended by the Robinson-Patman Act.[1]

The alleged discriminatory pricing occurred during the first 9 months of 1955 and involved sales by Pacific Molasses Company from its Houston, Texas terminal to various independent truck distributors. Some of these purchaser-distributors received price concessions from Pacific ranging from $\frac{1}{4}$¢ per gallon up to 1¢ per gallon; the latter being a reduction of nearly 10 percent from prices charged non-favored customers. The Commission's hearing examiner found that Pacific's most favored customer, Fort Worth Molasses Company, received price concessions totaling $24,487.70 during this 9-month period. He also found that the resale of blackstrap molasses was highly competitive and that these price discriminations placed non-favored customers of Pacific at a competitive disadvantage, thus injuring "secondary line" competition. The examiner further found that these price concessions were not made in good faith to meet competition from Pacific's rivals, thereby nullifying any section 2(b) defense by petitioners.[2]

On May 21, 1964, the Commission in a two-to-one decision, Commissioner Elman dissenting, issued its final order affirming the decision of the examiner as to the illegal pricing practices of Pacific but modifying the order to include James Ferguson, the president, and Bascom Doyle, the Houston sales manager, within the proscription of the order in their individual capacities. The Pacific Molasses Company and Ferguson join in this petition of review. Doyle is now employed by another company and his separate petition of review is treated by us in Doyle v. Federal Trade Commission, dated January 24, 1966, 356 F.2d 381.

■ One of petitioners' primary contentions is that they were denied administrative due process of law when the hearing examiner failed to abide by his pre-trial order in the conduct of the hearings. If this procedural error did occur and petitioners were prejudiced thereby, then there has been a denial of due process and the order of the Commission cannot be allowed to stand. United States ex rel. Accardi v. Shaughnessy (1954), 347 U.S. 260, 74 S.Ct. 499, 98 L.Ed. 681.[3]

---

* Of the United States Court of Claims, sitting by designation.

1. Section 2(a) of the Clayton Act, as amended by the Robinson-Patman Act, 15 U.S.C. sec. 13(a), provides in pertinent part that:

   "It shall be unlawful for any person engaged in commerce, in the course of such commerce, either directly or indirectly, to discriminate in price between different purchasers of commodities of like grade and quality, where either or any of the purchases involved in such discrimination are in commerce, * * * and where the effect of such discrimination may be substantially to lessen competition or tend to create a monopoly in any line of commerce, or to injure, destroy, or prevent competition with any person who either grants or knowingly receives the benefit of such discrimination, or with customers of either of them * * *."

2. Section 2(b), 15 U.S.C. sec. 13(b), provides in part:

   " * * * That nothing herein contained shall prevent a seller rebutting the prima-facie case thus made by showing that his lower price * * * was made in good faith to meet an equally low price of a competitor * * *."

3. Petitioners strongly contend that the administrative agency must be reversed whenever it violates its rules of procedure, regardless of a showing of prejudice; citing Yellin v. United States (1963), 374 U.S. 109, 83 S.Ct. 1828, 10 L.Ed.2d 778. Whether this is a correct interpretation of that opinion we need not decide, since we do find prejudice in this case.

The alleged procedural error occurred in the following manner: The Federal Trade Commission launched its investigation of Pacific's pricing practices in March of 1956 and the complaint involved here was issued in April 1959. In the fall of 1959 counsel representing both sides met and agreed to request that the hearing examiner hold a pre-hearing conference. The Rules of Practice of the Federal Trade Commission in effect at that time allowed the examiner, *at his discretion,* to determine whether a conference should be held.[4]

The hearing examiner consented to the formal request and the conference was held on July 14, 1960. Several agreements were reached which were to govern future proceedings. We are concerned with the Commission counsel's agreement to furnish petitioners' counsel, within 15 days of the start of hearings, a list of all the Commission's witnesses and documentary evidence. A reading of the formal request for the conference and of the record of the conference indicates the importance which petitioners placed in this agreement.[5]

The Rules of Practice further provided that once the examiner consented to hold a pre-hearing conference agreements reached therein would control the course of subsequent proceedings.[6] This rule was amended on July 21, 1961, to allow the examiner to modify prehearing agreements if necessary to prevent manifest injustice at the hearings.[7] (The amendment thus occurred after the conference but before the hearings.) The Commission stated on July 14, 1961, however, that the old rules would still apply to proceedings already in progress;[8] this case being one of these exceptions. The Commission reaffirmed the applicability of this exception in Union Bag-Camp Paper Corp., CCH Trade Reg. Rep. ¶ 17,-072 (Dkt. 7946, Sept. 23, 1964).

At the time of the pre-hearing conference it was generally felt that the hearings would commence in the fall of the same year—1960.[9] However, because of prolonged negotiations over a possible consent order, and the pending disposition of a similar proceeding against a competitor of Pacific, a 2-year delay ensued. On May 3, 1962 the examiner decided that enough time had been spent on attempting to settle by a consent order and ordered the hearings to commence in Houston on Monday, May 28, 1962. This apparently took counsel for both sides somewhat by surprise and Commission counsel immediately left for Texas to interview potential witnesses and prepare his case. Since the investigation of Pacific had occurred over 4 years previous, it was imperative for both sides to review the case with all the witnesses prior to

4. Sec. 3.10, 16 C.F.R. (1960), provides in part:
   "(a) The hearing examiner may, at his discretion, direct counsel for all parties to meet with him for a conference * * *.
   \* \* \* \* \*
   "(b) Pre-hearing conferences, in the discretion of the hearing examiner, may be stenographically reported as provided in sec. 3.16(f). * * * The record shall show the matters disposed of by agreement in such pre-trial conference. *The subsequent course of the proceeding shall be controlled by such action."* [Emphasis supplied.]

5. See Volume I of the Record, pages 12–19; and pages 260–262.

6. Section 3.10(b). See footnote No. 4.

7. Section 3.8, 16 C.F.R. (Supp.1965), provides in part:

   "(a) The hearing examiner * * * upon motion of any party * * * shall, direct counsel for all parties to meet with him for a conference * * *.
   \* \* \* \* \*
   "(c) The hearing examiner shall enter in the record an order which recites the results of the conference. Such order shall include the examiner's rulings upon matters considered at the conference, together with appropriate directions to the parties. *The examiner's order shall control the subsequent course of the proceedings, unless modified at the hearings to prevent manifest injustice."* [Emphasis supplied.]

8. Notice of Applicability of Amended and Revised Rules to Pending Proceedings, promulgated July 14, 1961.

9. See Volume I of the Record, page 275.

the commencement of hearings. At this time counsel for petitioners, located in San Francisco, had no reason to believe that the Commission counsel would not be able to supply them by May 13,—15 days before the commencement of hearings— with a list of witnesses and documentary evidence.

The first indication petitioners received of possible witnesses of the Commission was a telephone call on May 11, requesting the addresses of Ferguson and Doyle so that subpoenas could be issued. On Friday, May 18, Doyle received a summons and petitioners filed a motion to quash this subpoena on May 22, because of the violation of the pre-trial order. The examiner denied the motion on Thursday, May 24. On this latter date petitioners received the first notice of witnesses other than Doyle whom the Commission intended to call the following Monday. They were given the names of four independent truck distributors located in Texas. Petitioners received the call in San Francisco and so had Friday, Saturday, and Sunday in which to proceed to Houston, contact these witnesses, study their records, and prepare for cross-examination.

Commission counsel called eight witnesses altogether on Monday and Tuesday; seven independent distributors and Doyle. Petitioners learned the identities of the final three the first day of the hearings.

Because of the violation of the pre-trial order, petitioners moved for a 15-day continuance as soon as proceedings commenced on Monday. They also requested a list of all witnesses and of all documents to be introduced by the Commission. Counsel for the Commission opposed the continuance, stating that it had been physically impossible to abide by the order because of the unexpectedness of the commencement of the hearings. However counsel contended that since this was not a huge anti-trust case, and the facts being as they were, petitioners would not be prejudiced by this development. The examiner denied the motion for continuance, stating that although he had forgotten about the pre-hearing order, petitioners had neglected to remind him of the oversight until just 5 days before the hearings were to commence. By then all arrangements had been made, and it would thus work a great hardship on all concerned to delay the proceedings for 15 days. The examiner also felt that since all the witnesses were either customers of Pacific or employed by Pacific, and since the issues were relatively simple, there was a relatively slight possibility that petitioners would be surprised or prejudiced by a denial of a continuance.

Petitioners again moved for a continuance when the time came for cross-examination of the first truck-distributor. The motion was denied and petitioners were forced to commence cross-examination. By the afternoon of the 29th, the Commission had completed its case-in-chief and petitioners were required to proceed immediately with their defense. They were given off on the 30th and resumed on Thursday. On June 1, petitioners were granted a 40-day continuance to complete their defense and to recall witnesses for further cross-examination. Hearings were resumed on July 10 in San Francisco and terminated on July 16, 1962.

Both the hearing examiner and the Commission, in a two-to-one decision, concluded that although the pre-trial order had "regrettably" not been followed, no prejudice had been shown and so the results of the hearings should stand.

When an administrative agency promulgates rules to govern its proceedings, these rules must be scrupulously observed. See Service v. Dulles (1957), 354 U.S. 363, 77 S.Ct. 1152, 1 L.Ed.2d 1403. This is so even when the defined procedures are " * * * generous beyond the requirements that bind such agency * * *." Vitarelli v. Seaton, (1959), 359 U.S. 535, 547, 79 S.Ct. 968, 3 L.Ed.2d 1012 (Justice Frankfurter dissenting). For once an agency exercises its discretion and creates the procedural rules under which it desires to have its actions judged, it denies itself the right to vio-

late these rules. United States ex rel. Accardi v. Shaughnessy (1954), 347 U.S. 260, 74 S.Ct. 499, 98 L.Ed. 681. If an agency in its proceedings violates its rules and prejudice results, any action taken as a result of the proceedings cannot stand. Sangamon Valley Television Corp. v. United States, 106 U.S.App.D.C. 30, 269 F.2d 221 (D.C. Cir. 1959), cert. denied (1964) 376 U.S. 915, 84 S.Ct. 665, 11 L.Ed.2d 611.

█ There can be no question here but that the Commission violated its Rules of Practice which required the examiner to conduct " * * * the subsequent course of the proceeding * * * " in accordance with the pre-trial agreements. Sec. 3.10(b). See footnote 4. And if the Commission contends that it may apply the new rules retroactively and thereby revoke its July 14, 1961 exception and ignore its decision in *Union Bag-Camp Paper Corp.*, supra,[10] it still must show that such action does not prejudice petitioners' case. Petitioners had a right to believe that the Commission would abide by its published statement that the old rules would govern all proceedings then in progress, and a retroactive decision to apply the new rules which causes prejudice to petitioners' case cannot be allowed. Our sole question, therefore, is whether petitioners' cause was prejudiced by this "regrettable" oversight of the pre-trial order.[11]

The Commission states in its opinion that although petitioners may well have been surprised at the initial stages of the hearings by the lack of notice of witnesses and documentary evidence, any prejudice which might have resulted was over-come by the 40-day continuance and the right to recall witnesses for further cross-examination. Giant Food, Inc. v. Federal Trade Commission, 116 U.S.App.D.C. 227, 322 F.2d 977 (1963), cert. dismissed Rule 60, 376 U.S. 967, 84 S.Ct. 1121, 12 L.Ed. 2d 82 (1964), and E. B. Muller & Co. v. Federal Trade Commission, 142 F.2d 511 (6 Cir. 1944), are cited as authority. However, these cases were not instances where the petitioner had requested and been granted before the start of hearings the right to previous notice of witnesses and documentary evidence. Also, in these two cases the courts were dealing with general rules of evidence and not the particular Rules of Practice of a governmental agency.

Effective cross-examination requires thorough preparation by counsel before trial.[12] This is especially true in involved areas of the law such as the antitrust field. To phrase the proper question on cross-examination requires a sound knowledge of the witness, his business, records, books, and activities. And although petitioners might have gone ahead and guessed at who the witnesses might be when no word was received, this would hardly have been adequate.

The fact that petitioners were given a 40-day continuance to prepare for further cross-examination does not cure the prejudicial defect in procedure. The efficacy of cross-examination is in many ways directly related to its immediacy following direct testimony. The longer the delay between the two, the greater the risk that cross-examination will be unable to place the direct testimony in its proper perspective.[13]

---

10. New procedural rules published by an agency may be made to apply to pending proceedings, Keystone Motor Express, Inc. v. United States, 228 F.Supp. 793 (D.C. W.Va.1964), and also retroactively if injury or prejudice does not result therefrom. Sun Oil Company v. Federal Power Commission, 256 F.2d 233 (5th Cir. 1958), cert. denied (1958) 358 U.S. 872, 79 S.Ct. 111, 3 L.Ed.2d 103.

11. Even the new rule, 3.8(c), only allows the examiner to modify pre-trial agreements if necessary to prevent manifest in-justice at the hearings. There certainly would be a question here whether manifest injustice was being prevented *or allowed* by not following the pre-trial order.

12. See 5 Wigmore, Evidence, sec. 1368 (3d ed. 1940), Theory and Art of Cross-examination.

13. " * * * the cross-examination *immediately succeeds* in time the direct examination. In this way the modification or the discredit produced by the facts ex-

The final contention of the Commission that petitioners were at fault by not calling the oversight of the pre-trial order to the attention of the examiner sooner is, we think, without merit. Even if we were to hold that such a burden did exist, petitioners seemed to have met it. When the subpoena was served on Doyle on May 18, 10 days before the hearings were to commence, petitioners moved immediately to quash because of the violation of the pre-trial order. The examiner could have postponed the hearings the week before they were to start. Petitioners therefore did all that was required.

█ The business practices which the Congress seeks to regulate by sec. 2(a) are anything but explicit.[14] In fact the Congress affirmatively approves of price competition in sec. 2(b) of the Act.[15] Because of this uncertainty of the actual practices proscribed, a business concern should not be subjected to the $5,000 per day penalty which can arise from a cease and desist order, unless the Commission has scrupulously observed all its procedures in arriving at the decision to issue the order.

█ Since we are reversing the decision of the Commission on procedural grounds, it is unnecessary for us to discuss the merits of including Ferguson, in his individual capacity, within the proscription of the cease and desist order. However, for an indication of our views on this matter, see Doyle v. Federal Trade Commission, 356 F.2d 381, (5 Cir. 1966), handed down on January 24, 1966.

Because of the procedural errors committed by the Commission, its decision and order are reversed and this case is remanded. The decision to conduct further proceedings in this matter and the extent of any order which might arise therefrom are left to the discretion of the Commission.

---

tracted is more readily perceived by the tribunal. No interval of time elapses, to diminish or conceal their force." Id., para. 2(a).

"Since the purpose of this immediate sequence is to furnish the tribunal with the means of fixing the net significance of the witness' testimony while the tenor of his direct testimony is fresh in their minds, it seems proper enough to hold that the *opponent is entitled* to this *immediate sequence*, in order to expose without delay the weak points of the testimony against him." 6 Wigmore, Evidence, sec. 1884 (3d ed. 1940).

14. See the dissenting opinion of Justice Jackson in Federal Trade Commission v. Ruberoid Co. (1952), 343 U.S. 470, 485, 72 S.Ct. 800, 96 L.Ed. 1081.

15. See footnote No. 2, supra.