Jeffrey L. SILVERMAN, Petitioner,

v.

COMMODITY FUTURES TRADING COMMISSION, Respondent.

No. 77–1320.

United States Court of Appeals, Seventh Circuit.

Argued June 3, 1977.

Decided Sept. 19, 1977.

Joel J. Bellows, Charles B. Bernstein, Chicago, Ill., for petitioner.

Richard E. Nathan, Joanne Leveque, Commodity Futures Trading Comn., Washington, D. C., for respondent.

Before FAIRCHILD, Chief Judge, CUMMINGS, Circuit Judge, and GRANT, Senior District Judge.*

CUMMINGS, Circuit Judge.

Petitioner Jeffrey L. Silverman is an account executive employed by a commodity futures commission merchant in Chicago, Illinois. Petitioner presently appeals from the revocation of his registration as an "associated person" licensed to do business on commodity futures markets pursuant to the regulatory authority of the Commodity Futures Trading Commission (Commission) as empowered by the Commodity Futures Trading Commission Act of 1974 (1 U.S. Code Cong. & Admin.News (1974), pp. 1589–1622).

*Procedural History*

On February 16, 1977, in *Silverman v. Commodity Futures Trading Commission,* 549 F.2d 28 (7th Cir. 1977), this Court affirmed a two-year suspension of petitioner's trading privileges on commodity futures

* The Honorable Robert A. Grant, Senior United States District Judge for the Northern District of Indiana, is sitting by designation.

markets as a result of certain unauthorized and fraudulent trades on behalf of five customers' accounts in 1970 and 1971.[1] The nature of petitioner's improvident trades was the subject matter of a disciplinary petition dated March 13, 1973, as initiated by the Secretary of Agriculture pursuant to the Commodity Exchange Act of 1936. See *In Re Jeffrey L. Silverman,* CFTC Docket No. 75–6. At issue there was Silverman's allegedly fraudulent placement of 23 futures transactions in eggs, hogs, and pork bellies, with respect to five customers' accounts during September and October 1970 and in March 1972. In *Silverman, supra* at 33, we fully concurred in the Commission's finding that petitioner had wilfully violated the anti-fraud provision of the 1936 Act (7 U.S.C. § 6b)[2] and held that the suspension of his trading privileges was justified by the record.

After jurisdiction in the above case had been transferred to the Commission,[3] but before an administrative decision in the matter could be reached, petitioner on March 31, 1975, applied for registration as an "associated person" with the Commission pursuant to 7 U.S.C.A.Sup. § 6k(2). The completed application form (CFTC Form 4–R) disclosed under item 15 that Silverman was currently involved in administrative proceedings before the Commission on account of CFTC Docket No. 75–6, *supra.* Nonetheless, on July 18, 1975, the Commission granted petitioner's application for registration as an "associated person" and issued him License Number 505–54–9283. Thereafter, on February 28, 1977, during the pendency of this controversy, petitioner's registration was renewed for another two years as a matter of course. See 7 U.S.C.A.Sup. § 6k.

Events subsequent thereto before the Commission have resulted in petitioner's revocation of registration as an "associated person," in accordance with the Commission's regulatory authority as an independent federal agency entrusted with the safeguarding of the nation's commodity futures industry. The revocation of registration[4] was to be effective 15 days from the date of the Commission's final order of March 14, 1977, which would have been March 29, 1977. However, due to the serious effect of this unreviewed sanction, this Court on March 29, 1977, granted Silverman's emergency motion to stay enforcement of the Commission's order pending our decision in this matter and ordered that the appeal be expedited. This appeal arises on a petition to review the revocation of petitioner's registration.

### Regulatory Mission of the Commission

On October 23, 1974, Congress enacted the Commodity Futures Trading Commission Act of 1974 which extensively amended the Commodity Exchange Act of 1936, its predecessor. The legislative aim of the

---

1. The two-year suspension of trading privileges went into effect on May 25, 1976, and would, therefore, continue in full force until May 25, 1978. The record does not disclose nor do the parties make mention in their briefs of any stay of enforcement of the sanction.

2. In relevant part, 7 U.S.C. § 6b, provides:

    "It shall be unlawful * * * for any member of a contract market * * * or employee of any member, in or in connection with any order to make, or the making of * * * any contract of sale of any commodity for future delivery, made, or to be made, on or subject to the rules of any contract market, for or on behalf of any other person * * * to cheat or defraud or attempt to cheat or defraud such other person."

    This is Section 4b of the 1936 Act.

3. The Commission has taken jurisdiction from the Secretary of Agriculture without abatement pursuant to Section 411 of the Commodity Futures Trading Commission Act of 1974:

    "All operations of the Commodity Exchange Commission and the Secretary of Agriculture under the Commodity Exchange Act, including all pending administrative proceedings, shall be transferred to the Commodity Futures Trading Commission as of the effective date of this Act and to continue to completion * * *."

4. Even though petitioner is precluded by virtue of the suspension of trading privileges order from trading on his own account or for the account of any other person for two years, as an "associated person" registered with the Commission, he could, nevertheless, solicit or accept customers' orders and supervise others so engaged unless his registration was revoked.

1974 Act was to further the purpose of the previous Act in "ensuring fair practice and honest dealing on the commodity exchanges and providing a measure of control over those forms of speculative activity which often demoralizes the markets to the injury of producers, and consumers, and the exchanges themselves." See Senate Report No. 93–1131, 93rd Cong., 2nd Sess. (1974), reported in 3 U.S.Code Cong. & Admin. News (1974), pp. 5843, 5856.

An integral part of the 1974 Act was the creation of a new independent federal regulatory agency to be known as the Commodity Futures Trading Commission. See 7 U.S.C.A.Sup. § 4a. Unlike the Commodity Exchange Authority, the Commission was to have exclusive jurisdiction over all previously unregulated commodities and all transactions involving the sale of commodities on the nation's futures markets. See 7 U.S.C.A.Sup. § 2. In addition, the Commission was armed with broad regulatory and rule-making powers necessary to its operating procedures and business. See 7 U.S.C.A.Sup. §§ 2 and 4a(j).

### Scope of Registration Expanded

The 1974 Act also added a new category known as the "associated person" to the list of those persons required to be registered with the Commission in order to conduct business.[5]

In relevant part, 7 U.S.C.A. Sup. § 6k regulates an "associated person" as follows:

"(1) It shall be unlawful for any person to be associated with any futures commission merchant or with any agent of a futures commission merchant as a partner, officer, or employee * * * in any capacity which involves (i) the solicitation or acceptance of customer's orders * * or (ii) the supervision of any person or persons so engaged, unless such person shall have registered * * * with the Commission * * *.

"(2) Any such person desiring to be registered shall make application to the Commission in the form and manner prescribed by the Commission * * *. Such person, when registered hereunder, shall likewise continue to report and furnish to the Commission such information as the Commission may require. Such registration shall expire two years after the effective date thereof, and shall be renewed upon application therefor unless the registration has been suspended * * or revoked after notice and hearing as prescribed in Section 9 of this title * *."

### Revocation of Registration

Critical to the present controversy is the Commission's discretionary power to revoke the registration of an "associated person" pursuant to the procedures set forth in 7 U.S.C.A.Sup. § 9. Under this provision the Commission may upon reasonable belief of wrongdoing serve an "associated person" with a complaint and order to show cause why his registration should not be suspended or revoked. The substantive grounds for such revocation are contained in 7 U.S.C.A. Sup. § 12a(3) as follows:

"The Commission is authorized:

\* \* \* \* \* \*

"(3) in accordance with the procedure provided for in section 9 of this title, to suspend or revoke the registration of any person registered under this chapter if cause exists under paragraph (2)(B) [e. g., violation of the anti-fraud provisions of Section 4(b) of the 1936 Act, 7 U.S.C. § 6b] or (C) [failure to meet certain minimal financial requirements] of this section * * *."

Thereafter, the Commission may in its discretion, "suspend, for a period not to exceed six months, or revoke the registration of such person, and may assess such person a civil penalty of not more than $100,000 for each violation." See 7 U.S.C.A.Sup. § 9.

In addition to administrative sanctions, the 1974 Act contains criminal penalties

---

**5.** Under the 1936 Act, only future commission merchants and floor brokers were required to be registered with the Secretary of Agriculture.

The 1974 Act incorporates these provisions *in toto* but substitutes the Commission for the Secretary. See 7 U.S.C.A.Sup. §§ 6d and 6f.

ranging from several felonies, as defined in 7 U.S.C.A.Sup. §§ 13(a) and (b), to numerous misdemeanors as defined in 7 U.S.C.A. Sup. § 13(c). In particular, violation of the anti-fraud provisions of Section 4b of the 1936 Act (7 U.S.C. § 6b) is a misdemeanor punishable by imprisonment not to exceed one year or a fine not to exceed $100,000, or both.

### Order to Show Cause

On May 27, 1976, an order to show cause was issued by the Commission in *In the Matter of Jeffrey L. Silverman* (Docket No. 76–18) pursuant to 7 U.S.C.A.Sup. § 9. Therein petitioner was ordered to appear before an Administrative Law Judge (ALJ) on June 10, 1976, in Washington, D.C., for the purpose of attending a public hearing to determine whether Silverman's registration as an "associated person" should be revoked.

The order to show cause, *inter alia*, contained the following allegations:

"A. Jeffrey L. Silverman willfully violated Section 4b of the Act (7 U.S.C. § 6b) in that, while employed as a solicitor and account executive for two registered futures commission merchants in 1970 and 1972, Jeffrey L. Silverman cheated and defrauded five customers of such registered futures commission merchants by executing trades for the accounts of such customers without their knowledge, consent or prior authorization.

"B. On May 5, 1976, the Commission issued a Final Order, in CFTC Docket No. 75–6, prohibiting Jeffrey L. Silverman from trading on or subject to the rules of any contract market for a period of two years and ordering that all contract markets should refuse him all trading privileges during said period. It was further ordered that Jeffrey L. Silverman permanently cease and desist from placing, or causing to be placed, in any customer's account, any contracts of sale of any commodity for future delivery, without the prior knowledge, consent or authorization of such customer or otherwise to cheat or defraud, or attempt to cheat or defraud, any person in connection with any order to make, or the making of, any contract of sale of any commodity for future delivery on or subject to the rules of any contract market for, or on behalf of, any person.

"C. By reason of the willful violations of the Act as alleged in paragraph A above and the sanctions imposed as described in paragraph B above, the registration of Jeffrey L. Silverman as an associated person as described in Section 4k of the Act (7 U.S.C. § 6k) should be revoked."

Thereafter, pursuant to the Commission's Rules of Practice (Rule 10.3(b), 17 C.F.R. § 10.3(b)),[6] the rule to show cause was scheduled for hearing on an expedited basis. However, on June 10, 1976, the ALJ modified the Commission's order in fairness to petitioner who had complained in a motion attached to his answer that (1) he would be unable to adequately prepare his defense on such short notice; (2) the Washington, D.C., location for the hearing would prevent many local defense witnesses from testifying in his behalf; and (3) sufficient evidence in the nature of mitigation and rehabilitation could not be developed in such a short period of time. Significantly, the ALJ changed the location of the hearing to Chicago, Illinois, as requested by petitioner, and granted him additional time to prepare his defense.

### Hearing Before ALJ in Chicago

On June 24, 1976, the hearing was commenced in this case before an ALJ pursuant

---

**6.** In relevant part 17 C.F.R. § 10.3(b) provides: "§ 10.3 Suspension, amendment, revocation and waiver of rules.

＊　＊　＊　＊　＊　＊

(b) In the interest of expediting decision or to prevent undue hardship on any party or for other good cause the Commission may order the adoption of expedited procedures and may waive any rule ＊ ＊ ＊ of this part in a particular case and may order proceedings in accordance with its direction upon a determination that no party will be prejudiced and that the ends of justice will be served.—Reasonable notice shall be given to all parties of any action taken pursuant to this provision."

to 7 U.S.C.A.Sup. § 9. The cause was prosecuted by the Commission's Department of Enforcement (DE) whose case in chief consisted of the introduction of three official Commission records, identified as exhibits DE–1, 2, and 3.

Exhibit DE–1 was the March 1973 complaint and notice of hearing in CFTC Docket No. 75–6 and alleged in detail the fraud engaged in by petitioner. Exhibit DE–2 was the December 1975 decision and order of the ALJ finding petitioner guilty of willful fraud and ordering suspension of his trading privileges. Exhibit DE–3 was the final order of the Commission entered on May 5, 1976, upholding the finding of willful violation of the anti-fraud provisions of the Act but modifying the suspension sanction from five years to two years. See *Silverman v. Commodity Futures Trading Commission, supra.* The exhibits constituted the DE's *prima facie* case and were received into evidence as official documents by the ALJ pursuant to the Commission's Rules of Practice (Rule 10.67(b), 17 C.F.R. § 10.67(b)). The DE then rested its case.

At the conclusion of the DE's case, petitioner moved for a directed verdict on the grounds that the Commission had failed to meet its "high" burden of proof as to his unfitness and that the official documents previously introduced into evidence were insufficient to satisfy this burden. Petitioner argued that "the Government must actually show that a licensee is truly unfit, that he is morally degenerate, that he cannot be trusted with customer's funds, that he is thoroughly a bad guy and does not deserve to act in the industry or earn his livelihood to support his family in and around the commodities markets" (Tr. 32).

The ALJ denied petitioner's motion, holding that the DE had made out a *prima facie* case under Section 6b of the 1936 Act by virtue of the official documents alone (Tr. 34). The ALJ rejected *sub silentio* petitioner's contention that the DE shouldered a

"special" burden of proof in this matter. An alternative motion for a continuance on behalf of petitioner was likewise denied.

### Mitigation and Rehabilitation

Thereafter petitioner presented his defense of mitigation and rehabilitation. The evidence consisted entirely of testimony garnered from 15 witnesses personally acquainted with him. All of the witnesses, with the exception of one, were intimately involved with the commodity futures markets and in varying professional capacities had dealt with petitioner.

Fairly summarized, the evidence consisted of testimony as to their opinion of petitioner's honesty and integrity since the filing of the March 13, 1972, complaint (CFTC Docket No. 75–6); testimony as to his expertise as an associated person in the commodities markets; and the probable financial, as well as personal, consequences the revocation of registration would have on his career. To a limited extent the witnesses were cross-examined by the DE.

On August 24, 1976, the ALJ entered an initial decision in this matter concluding that the evidence did not warrant revocation of petitioner's registration and ordering the proceeding dismissed.

### Commission's Final Review

On August 27, 1976, the DE filed a timely notice of appeal with the Commission seeking review of the ALJ's adverse ruling.[7] On March 14, 1977, the five-member Commission unanimously reversed the ALJ and ordered petitioner's registration revoked, stating:

"[W]e have carefully reviewed respondent's [Silverman's] evidence of extenuation and rehabilitation, but conclude that it is insufficient in view of the serious nature of his violations. While revocation is a severe sanction the public cannot

7. In relevant part, the CFTC's Rules of Practice (17 C.F.R. 10.104(b)) provide:
"On review, the Commission may affirm, reverse, modify, set aside or remand for further proceedings, in whole or in part, the initial decision by * * * [an] Administrative Law Judge and make any findings or conclusions which in its judgment are proper based on the record in the proceeding."

be adequately protected, or the requisite deterrent effects achieved, if a person who has intentionally cheated and defrauded customers * * * is allowed to continue to handle customer accounts or to supervise others so engaged." (Final Opinion and Order, CFTC Docket No. 76–18, R. 231.)

The Commission accordingly ordered petitioner's registration revoked effective fifteen days hence.

### Appropriateness of Commission's Sanction

In *Butz v. Glover Livestock Commission Co.,* 411 U.S. 182, 185, 93 S.Ct. 1455, 1458, 36 L.Ed.2d 142 the Supreme Court clearly stated the applicable standard for appellate review of administrative sanctions in circumstances such as these:

"The applicable standard of judicial review in such cases required review of the Secretary's order according to the 'fundamental principle . . . that where Congress has entrusted an administrative agency with the responsibility of selecting the means of achieving the statutory policy "the relation of remedy to policy is peculiarly a matter for administrative competence." ' " *American Power Co. v. SEC,* 329 U.S. 90, 112, 67 S.Ct. 133, 146, 91 L.Ed. 103 (1946).

As noted by Judge Hastings in *Nowicki v. United States,* 536 F.2d 1171, 1178 (7th Cir. 1976), the *Butz* Court twice cited this Circuit's opinion in *G. H. Miller & Co. v. United States,* 260 F.2d 286 (7th Cir. 1958) (*en banc*), certiorari denied, 359 U.S. 907, 79 S.Ct. 582, 3 L.Ed.2d 572 as a supporting authority. See 411 U.S. at 187, 93 S.Ct. 1455.

In *G. H. Miller, supra,* we affirmed the six-month revocation of the Miller company's registration as a futures commission merchant and of Miller's registration as a floor broker because of manipulative trades in egg futures. The revocation was pursuant to Section 6(b) of the Commodity Exchange Act of 1936 (7 U.S.C. § 9). On rehearing by this court *en banc,* we concluded:

"It is, therefore, clear to us that if the order of an administrative agency finding a violation or a statutory provision is valid and the penalty fixed for the violation is within the limits of the statute [and] the agency has made *an allowable judgment in its choice of the remedy* * * ordinarily the Court of Appeals has no right to change the penalty because the agency might have imposed a different penalty." 260 F.2d at 296.

Applying these principles to the case at hand, it is likewise clear to us that the Commission has been entrusted by Congress with the special mission of enforcing fair practice and honest dealing on the commodity futures markets. As was made clear in *Savage v. Commodity Futures Trading Commission,* 548 F.2d 192, 197 (7th Cir. 1977):

" * * * we must be mindful of a Congressional purpose, clearly evidenced at least since 1933, to protect the American investing and speculating public not only from fraud and fraudulent practices, but from those whose past actions indicate that they might be tempted to engage in such practices. * * * Congress cannot specify licensing requirements for each particular applicant but, of necessity, must within reason adopt somewhat general standards and authorize some agency to apply them." (Citations and footnote omitted).

Contrary to petitioner's arguments, the DE did not have to shoulder a special burden of proof here and need only have established a *prima facie* case in order for the Commission to revoke petitioner's registration under 7 U.S.C.A.Sup. § 12a(3), as it did (Tr. 34). As was the case in *Savage, supra,* at 196, once the DE proved Silverman's willful violation of the antifraud provisions of Section 4b of the 1936 Act (7 U.S.C. § 6b), it became his burden to go forward to persuade the Commission to exercise its discretion to permit his continued registration.

The Commission's final opinion in this matter articulated a rational connection between the petitioner's willful violations of Section 4b of the 1936 Act (as

established in CFTC Docket No. 75–6) and its considered choice to revoke his registration. See *Burlington Truck Lines v. United States*, 371 U.S. 156, 167–168, 83 S.Ct. 239, 9 L.Ed.2d 207. As the Commission explained, otherwise the public could not be adequately protected and deterrent effects would not be achieved. The Commission also exercised its expert discretion by balancing the evidence of extenuation and rehabilitation against the seriousness of the offense and the need to insure the highest fiduciary standards for persons registered under the 1974 Act.

■ Furthermore, we do not agree with petitioner that the expedited hearing and briefing schedule adopted by the Commission in this case violated due process. In support of this argument, petitioner cited *United States v. Heffner*, 420 F.2d 809 (4th Cir. 1970) and *Pacific Molasses v. Federal Trade Commission*, 356 F.2d 386 (5th Cir. 1966) for the proposition that the failure of a government agency to abide scrupulously by its own rules, regulations, or procedures violates administrative due process where prejudice is shown. As stated, *supra*, Commission Rule 10.3(b) (17 C.F.R. § 10.3(b)) permits the Commission to expedite hearing procedures in its discretion so long as no party is prejudiced and the ends of justice will be served. It is clear from the record that the modified schedule of June 10, 1076, ordered by the ALJ was an attempt to balance the Commission's desire to provide immediate public protection and the petitioner's due process right to defend himself. Under the circumstances there was no violation of Rule 10.3(b).

In addition, the violations of agency regulations in *Heffner* and *Pacific Molasses, supra*, are distinguishable from the Commission's adoption of an expedited hearing and briefing schedule here. Thus in *Heffner*, Special Agents of the IRS Intelligence Division blatantly violated Internal Revenue Service procedures aimed at protecting the Fifth and Sixth Amendment rights of persons suspected of criminal tax fraud. See 420 F.2d at 811. In *Pacific Molasses, supra*,

the Federal Trade Commission violated a prehearing conference agreement to furnish that petitioner a list of all the Commission's prospective witnesses and documentary evidence although Section 3.10 of the FTC's Rules of Practice provided that an agreement reached at a prehearing conference would control the subsequent course of the proceedings. See 356 F.2d at 388. The prejudice to litigants which prompted reversal in *Heffner* and *Pacific Molasses* prevented a full and fair adjudication of the merits. Even assuming *arguendo* that Silverman was prejudiced by the expedited schedule, it was not reversible error. The record clearly demonstrates that he was not deprived of an opportunity to present substantial evidence of mitigation and rehabilitation. The possibility that additional testimony would have changed the Commission's sanction is sheer speculation and exists in any proceeding of this kind.

Petitioner was unable to convince the Commission that he presents no further danger to the investing public. It described his violations as of "serious nature" (R. 23). His willfulness was discussed in our prior opinion (549 F.2d at 31). After a careful review of the record we are convinced that he was afforded administrative due process and was given a "meaningful opportunity" to prepare his defense. While there is a surface inconsistency between the suspension imposed in the prior proceeding and the revocation imposed here, Commission counsel has pointed out that Congress had not required registration of associated persons nor provided for revocation of such registration at the time of the 1973 disciplinary proceeding.

The revocation of petitioner's registration was a permissible administrative sanction addressed to the sound discretion of the Commission. Congress invested the Commission with revocation power to safeguard the public interest in the well being of the nation's commodity futures markets. Petitioner may reapply for registration at any time. On this record, we cannot say that

the penalty imposed was an abuse of discretion.

The Commission's order is affirmed.