JOSÉ HERNÁNDEZ GARCÍA y otros, peticionarios, *v.* JUNTA DE RELACIONES DEL TRABAJO DE PUERTO RICO, recurrida.

*Numero*: JRT-63-11      *Resuelto*: 9 de febrero de 1967

*Gilberto Concepción de Gracia,* abogado de los peticionarios; *J. B. Fernández Badillo, Procurador General, Luis M. Rivera Pérez* y *Marta Ramírez de Vera,* abogados de la recurrida.

Sala Primera integrada por el Juez Asociado Señor Pérez Pimentel como Presidente de Sala y los Jueces Asociados Señores Blanco Lugo, Rigau y Ramírez Bages.

EL JUEZ ASOCIADO SEÑOR RAMÍREZ BAGES emitió la opinión del Tribunal.

Los peticionarios cuestionan la facultad de la Junta de Relaciones del Trabajo para designar un oficial examinador a fin de que, a base de la transcripción de la evidencia reci-

bida por otro examinador que cesó en su cargo, luego de terminadas las audiencias en este caso, redactara un informe conteniendo conclusiones de hecho y de derecho, así como sus recomendaciones sobre el caso. Apuntan también que incidió (a) al negarles una vista para argumentar oralmente sus excepciones y objeciones al informe del oficial examinador; (b) al interpretar el inciso (g) del Art. IX del convenio colectivo suscrito por la Unión de Trabajadores del Transporte y Ramas Anexas, Inc., y la Autoridad Metropolitana de Autobuses, que dispone que "los trabajadores [dejados cesantes] serán empleados según el orden de antigüedad y servicios satisfactorios en general, y, en caso de empate en estas cualificaciones, se determinará por sorteo" pues no le dio consideración alguna al derecho de antigüedad; y (c) al desestimar la querella contra la Unión de Trabajadores del Transporte de Puerto Rico y Ramas Anexas, Inc., *in toto*, a pesar de concluir que dicha Unión incurrió en una práctica ilícita en el caso de Guillermo Petterson.

No le asiste la razón a los peticionarios en los referidos planteamientos. A continuación resumimos los hechos del caso y los fundamentos en que basamos esta conclusión.

—A—

*Hechos del Caso*

En el convenio colectivo suscrito por la Unión de Trabajadores del Transporte y Ramas Anexas, Inc., y la Autoridad Metropolitana de Autobuses se proveyó específicamente con respecto a cesantías por razones de economía. (Véase el texto del inciso (g) del Art. IX de dicho convenio copiado en el escolio (4) de esta opinión.) Como la Autoridad estaba consciente al aceptar el aumento de salario provisto por el convenio de que habría de sufrir considerables pérdidas, procedió a tomar diversas medidas para evitarlas o, por lo menos, reducirlas. Advertida por estudios al efecto de que

sus gastos de mantenimiento excedían en grado sumo los de empresas comparables en Estados Unidos, resolvió que debía reducir el personal de su taller de mecánica. Discutió esto con la referida Unión durante unos cinco meses hasta que por último ésta aceptó la razonabilidad de la propuesta reducción. Para llevar a cabo dicha reducción adoptó la Autoridad las siguientes normas: (a) se incluirían los obreros que por su edad fueran elegibles a la compensación del Seguro Social de Estados Unidos; (b) y se consideraría el récord de ausencias de cada empleado. También se determinó hacer una investigación para determinar los empleados que tenían fuentes de ingreso colaterales.

En 2 de junio de 1961, la Autoridad notificó a un gran número de sus empleados que prescindía de sus servicios. Se incluyeron empleados de oficina, administración, y 56 que estaban incluidos en la unidad cubierta por el convenio. Algunos de éstos habían militado activamente en una agrupación que combatía a miembros de la directiva de la Unión mientras que otros habían apoyado al Presidente de ésta en las disputas internas de dicha organización. Otros de los miembros de la matrícula que fueron dejados cesantes eran indiferentes a las referidas disputas internas de la Unión.

En tres ocasiones distintas, subsiguientemente a las cesantías, la Autoridad necesitó lavadores de vehículos y la Unión recomendó y aquélla reempleó dos de los trabajadores previamente despedidos. Luego la Autoridad necesitó mecánicos de motor Diesel y los requirió a la Unión a condición de que contaran con diploma acreditativo del oficio; la Unión lo comunicó al grupo de mecánicos dejados cesantes pero de éstos sólo uno tenía el diploma exigido y a éste se le dio empleo. Lo mismo ocurrió al surgir una vacante de acomodador. Cuando se necesitaron obreros no diestros se escogieron ocho de entre el personal que se despidió. Todo esto se hizo a base de los anteriores servicios satisfactorios.

A Guillermo Petterson se le dejó cesante al comunicar la Unión a la Autoridad que lo había suspendido de su matrícula debido a que éste había injuriado al Presidente de la Unión en hojas sueltas y otra propaganda. Tan pronto la Unión reconsideró su acción reintegró a Petterson a su matrícula, y así se lo comunicó al patrono. Éste lo repuso en su empleo. La Unión pagó a Petterson los haberes que le correspondían por el tiempo que estuvo desempleado por la referida razón.

—B—

### Alegadas Prácticas Ilícitas

A base de tales hechos, se querelló un grupo de los obreros despedidos ante la Junta de Relaciones del Trabajo y los abogados de ésta imputaron a la Autoridad sendas prácticas ilícitas del trabajo consistentes en que (1) al designar a los obreros a ser despedidos se escogieron aquéllos que se oponían a la forma en que se llevaban los asuntos de la Unión—esto no se sustanció—; (2) se violó el Art. IX del convenio al no discutir el patrono con la Unión lo relativo a la reducción y cesantía del personal—se probó todo lo contrario excepto que la Unión y la Autoridad, aunque sentaron las normas y criterios con respecto al asunto, nunca mencionaron y designaron personas específicas a despedirse—; (3) se violó el inciso (g) del Art. IX del convenio—discutiremos este cargo bajo el tercer error considerado más adelante—.

—C—

### Errores Apuntados

1.—Arguyen los peticionarios que la Junta no tenía facultad para designar un examinador para que a base de la transcripción de la evidencia recibida por otro examinador que cesó en su cargo luego de terminadas las audiencias en este caso, redactara y enviara a las partes un informe con-

teniendo conclusiones de hecho y de derecho así como sus recomendaciones sobre el caso.

Al levantarse esta cuestión mediante excepción al informe del segundo oficial examinador, la Junta sostuvo que su práctica de sustituir un oficial en circunstancias análogas a las de este caso o de prescindir del informe del funcionario que cesa y en su lugar emitir un proyecto de decisión y orden responden a una razón de necesidad y está sancionada por las Secs. 6 y 9 del Art. II de su Reglamento (29 R.&R.P.R. secs. 64–7 y 64–10). [1]

Sostienen los peticionarios que el Reglamento de la Junta faculta a ésta, en casos como el que nos ocupa, a transferir el procedimiento ante ella misma pero no la faculta específicamente para nombrar un examinador a los fines de rendirle un informe basado en la prueba que desfiló ante otro examinador; que tal violación de su reglamento perjudicó a los peticionarios pues la prueba era conflictiva; y que el Reglamento de la Junta no contiene una disposición parecida a la del Reglamento de la Junta Nacional de Relaciones del Trabajo sobre la cuestión en controversia. [2]

---

[1] (a) La referida Sec. 6 del Art. II del Reglamento de la Junta de Relaciones del Trabajo, luego de proveer que las audiencias se celebrarán ante un oficial examinador nombrado por el Presidente de la Junta o ante esta misma, o ante uno de sus miembros o ante determinada otra persona, dispone que: "En cualquier tiempo la Junta podrá designar otro oficial examinador para que presida la audiencia en lugar del oficial examinador designado previamente."

(b) La Sec. 9 del Art. II de dicho Reglamento, en parte provee que: "Durante la audiencia, después de terminada ésta y con anterioridad al informe del oficial examinador, la Junta podrá, mediante orden especial al efecto, transferir cualquier audiencia o procedimiento ante ella misma."

[2] El referido Reglamento dispone que: "En caso que el oficial examinador designado para presidir la audiencia resulte inasequible a la Junta después de terminada la audiencia y antes de radicar su decisión, la Junta podrá transferir el caso a sí misma para fines de audiencia adicional o a los fines de una propuesta decisión, o ambas cosas, o puede requerir del Jefe Examinador. . . que designe otro oficial examinador para tales fines." (29 C.F.R. § 102.36) El Art. 5(c) de la Ley de Procedimiento Administrativo (5 U.S.C.A. § 1004(c)) provee que: "Los mismos funciona-

A los fines de resolver, es necesario hacer una breve exposición de los principios de derecho aplicables. Las conclusiones y recomendaciones de sus examinadores sirven meramente como asesoramiento para la Junta de Relaciones del Trabajo. Ésta luego puede dictaminar sobre las cuestiones en controversia a base de su propia consideración del récord sin estar obligada a seguir el informe de los examinadores. El debido proceso de ley en casos administrativos ante dicha Junta no requiere que el testimonio que desfila en las audiencias sea evaluado por el oficial que lo oyó y observó a los testigos. Sí es esencial que antes de informar a la Junta dicho funcionario, si la prueba no se pasó ante él, haya leído y considerado todo el récord. Aun antes de adoptarse la disposición contenida en el Reglamento de la Junta Nacional de Relaciones del Trabajo sobre sustitución de examinadores luego de terminada la audiencia, se dictaminó que tal sustitución "no lesionaba los requisitos del debido proceso en violación de la Constitución federal o de la Ley Nacional de Relaciones del Trabajo." Sin embargo, luego de la adopción de la referida disposición sobre sustitución, se ha limitado la facultad de sustituir al examinador que oyó la prueba, cuando se convierte en inasequible, a aquellas situaciones "donde la evaluación de la credibilidad es tal que puede decirse que no es necesario o capaz de constituir un factor pertinente a los fines de recomendar una decisión o dictar una decisión inicial." *Morgan* v. *United States*, 298 U.S. 468 (1936) ; *Labor Board* v. *Mackay Co.*, 304 U.S. 333, 350–351 (1938) ; *National Labor Relations Board* v. *Stocker Mfg. Co.*, 185 F.2d 451 (3d Cir. 1950) ; *National Labor Relations Board* v. *Dixie Shirt Co.*, 176 F.2d 969 (4th Cir. 1949) ; *Gamble-Skogmo Inc.* v. *Federal Trade Commission*, 211 F.2d 106 (8th Cir. 1954).

---

rios que presiden durante el desfile de la prueba. . . redactarán la decisión inicial o que propongan. . . excepto cuando tales funcionarios resulten inasequibles para la agencia."

En las jurisdicciones estatales, la jurisprudencia es menos exigente al permitir las sustituciones en cuestión. *Big Top Incorporated* v. *Hoffmann*, 399 P.2d 249, 251 (Col. 1965); *Cooper* v. *State Bd. of Medical Examiners*, 217 P.2d 630 (Cal. 1950); *Helmick* v. *Industrial Accident Commission*, 116 P.2d 658 (Cal.App.2d 1941). Véase, Davis, *Administrative Law Treatise*, vol. 2, sec. 11.16, págs. 111–117.

■ En *Pacific Molasses Company* v. *Federal Trade Commission*, 356 F.2d 386 (5th Cir. 1966), se dictaminó que cuando una agencia administrativa establece una regla para gobernar sus procedimientos, debe observarse escrupulosamente ". . . Tan pronto como la agencia ejerce su discreción y adopta unas reglas de procedimiento bajo las cuales desea que se hagan sus adjudicaciones se niega a sí mismo el derecho de violar tales reglas. Si la agencia en el curso de sus procedimientos viola sus reglas y con ello causa perjuicio, no puede sostenerse acción alguna tomada a base de tales procedimientos." La Comisión Federal de Comercio en este caso había adoptado la regla de que los procedimientos se siguieran de acuerdo con los convenios celebrados con antelación al juicio. En este caso en uno de estos convenios se estipuló que la Comisión suministraría al abogado del peticionario una lista de los testigos de la Comisión y de la prueba documental con 15 días de anticipación a la vista. La Comisión no cumplió con este convenio. El Tribunal concluyó que con ello se perjudicó la causa del peticionario debido a que no pudo prepararse a cabalidad para repreguntar.

■ Deducimos de lo expuesto que la Junta de Relaciones del Trabajo, en ausencia de reglamento al efecto, tiene facultad para designar un examinador para que a base de la prueba que desfiló ante otro examinador, redacte y someta el informe contentivo de "conclusiones de hecho y la ley y recomendaciones respecto a las disposiciones del caso". (29 R.&R.P.R. sec. 64–10.) El hecho que su reglamento provea

para la sustitución de un examinador por otro para que presida la audiencia, y de que la Junta pueda en cualquier etapa de los procedimientos transferir cualquier audiencia o procedimiento ante ella misma, no implica que la Junta se haya desprendido de la facultad de sustituir al examinador que presidió la audiencia en que desfiló toda la prueba en determinado caso. Las facultades específicamente provistas en el reglamento en cuestión no son excluyentes ni conflictivas con la referida facultad de sustitución. Dichas disposiciones más bien proveen con respecto a situaciones distintas e independientes de tal sustitución. El hecho que en el Reglamento de la Junta de Relaciones del Trabajo y en la Ley Federal de Procedimiento Administrativo se haya provisto específicamente con respecto a sustituciones de examinadores luego de terminadas las audiencias no debe interpretarse que se hizo porque la Junta careciese anteriormente de tal facultad. No tan sólo la tenía sino que la ejerció. Es evidente que se proveyó, específicamente sobre el particular con el fin de asegurar que la decisión inicial se hiciese por el examinador que oyó la prueba. *Gamble-Skogmo Inc.*, supra.

■ Pero aun en el supuesto de que la sustitución en este caso constituyese una violación del Reglamento de la Junta, los peticionarios no establecieron, ni el récord demuestra, que su causa fuese perjudicada por tal acción, de acuerdo con la doctrina de *Pacific Molasses Company*, supra. Tampoco se estableció que la sustitución no procedía porque la evaluación de la credibilidad de los testigos era tal que constituía un factor pertinente a los fines del informe del examinador a la Junta. *Gamble-Skogmo Inc.*, supra. En este caso, el informe del segundo oficial examinador nombrado por la Junta misma y no meramente por su Presidente, se basó en el expediente completo del caso "y tomando en consideración toda la evidencia testifical y documental." La Junta, por conducto de dos de sus miembros (el Presidente se abstuvo

de participar en la decisión de este caso) consideró el referido informe, las excepciones al mismo, así como el expediente completo del caso, a los fines de la decisión y orden que dictó en este caso desestimando la querella.

Examinado el récord, convenimos con la Junta y su examinador que los propios peticionarios admitieron en el curso de su testimonio que los afectados por "las cesantías representaban diversas tendencias en el seno de las disputas internas de la organización obrera." Además, la prueba demostró que la cesantía obedeció a un plan discutido previa y extensamente con la Unión en el cual las relaciones entre los obreros a ser dejados cesantes y la Unión no jugó factor alguno. La cuestión de violación del convenio colectivo no se basaba en el testimonio de testigos sino en la interpretación del inciso (2) del Art. IX del mismo. Se incurrió en práctica ilícita al suspenderse al empleado Petterson pero se corrigió tal falta en la forma y manera que lo hubiese hecho la Junta, es decir, reponiéndolo en su empleo y pagándole lo que dejó de percibir durante el breve término de su suspensión.

■ 2.—Apuntan los peticionarios que la Junta incidió al negarles la vista oral que solicitaron. La concesión de tal vista es discrecional en la Junta. El récord no demuestra que la Junta abusara de su discreción al negarla.[3]

■ 3.—Arguyen los peticionarios que el patrono violó el convenio colectivo en vigor pues al proveer empleo a los empleados cesantes no le dio consideración alguna al factor

---

[3]La sec. 10 del Art. II del Reglamento de la Junta (29 R.&R.P.R. sec. 64–11) provee en parte que:

". . . En caso de que cualquier parte en el procedimiento deseare obtener permiso para argumentar oralmente sus excepciones y objeciones ante la Junta, deberá solicitarlo de la misma por escrito dentro de los 5 días siguientes a la fecha en que reciba copia del informe del oficial examinador. Si tal permiso fuere concedido, la Junta deberá notificar a todas las partes la fecha y sitio para la argumentación oral."

de antigüedad. La disposición aplicable es el inciso (g) del Art. IX del referido convenio. (⁴)

La letra de la disposición reglamentaria en cuestión es clara. Provee que cuando el patrono tenga que efectuar una reducción de personal por razón de economía, de haber empleos iguales o similares disponibles al ocurrir las cesantías, deberá el patrono cubrir tales empleos con los obreros cesantes en orden de antigüedad y de servicios satisfactorios. Pero de no existir tales vacantes en ese momento, los obreros cesanteados tendrán prioridad para ser nombrados preferentemente "en plazas de esta naturaleza" que surjan en el futuro siempre que su récord como empleados haya sido satisfactorio. La prueba demuestra que al surgir vacantes en las actividades del patrono, éste no tan sólo se ciñó a la letra de esta disposición—las únicas dos plazas idénticas a las anteriormente existentes fueron cubiertas por dos trabajadores previamente dejados cesantes—sino que cuando hubo vacantes en empleo no idéntico, también les dio oportunidad preferente a los obreros que habían sido despedidos.

4.—El apuntamiento basado en el despido injustificado de Petterson carece de méritos.

*En vista de lo expuesto, se confirmará la decisión y orden de la Junta de Relaciones del Trabajo, de 20 de junio de 1963.*

---

(⁴)Dicha sección lee así:

"Cuando por razones de economía, la Autoridad necesite reducir el número de turnos en itinerario o cerrar uno de los departamentos en sus talleres, o parte del mismo donde se afecten uno o más trabajadores, la Autoridad, de haber empleos disponibles con funciones iguales o similares en alguna otra actividad de la Autoridad, empleará a los obreros afectados y les pagará el salario que devengan dichas plazas. Los trabajadores serán empleados según el orden de antigüedad y servicios satisfactorios en general, y en caso de empate en estas cualificaciones, se determinará por sorteo.

"En caso de que no haya plazas vacantes iguales o similares, el personal cesanteado según lo dispone este Inciso, tendrá prioridad para ser nombrado preferentemente ·en plazas de esta naturaleza que surjan en el futuro siempre que su récord como empleado haya sido satisfactorio."