Colón Birriel, Juez Ponente
*801 TEXTO COMPLETO DE LA SENTENCIA
I
Los recurrentes, Unión Número 92 ("Unión Número 92"), recurren de la Resolución y Orden emitida por la Comisión de Servicio Público de Puerto Rico ("Comisión"), el 7 de abril de 1997, notificada a los interesados el 8 de abril de ese afio, en el caso de la petición de los recurridos José A. Cátala Berrios, Unión Número 3395 ("Unión Número 3395"), en los misceláneos 1268, 1416 y 1158. Mediante el referido dictamen, el foro administrativo ratificó su Orden Administrativa de 21 de agosto de 1996, la que enmendó "NUNC PRO TUNC", eliminando el inciso cinco de ésta, y ordenó a la Unión 92 acatar el cese y desista que dicho organismo emitiera el 19 de octubre de 1992, prohibiéndole operar la ruta de Caguas a Humacao. El 28 de abril de 1997, la Unión Número 92 solicitó la reconsideración del dictamen, reconsideración que fue acogida por la Comisión mediante su Orden Administrativa de 9 de mayo de 1997. Transcurridos noventa (90) días desde que la Comisión acogió la moción de reconsideración, y no habiendo ésta tomado acción en torno a ésta, la Unión Número 92 presentó ante nos el recurso que nos ocupa.
II
Surge del escrito de la Unión Número 92, que desde hace aproximadamente veinte (20) años, esta sirve la ruta de Caguas a Humacao, con viraje en Juncos. Esto es, desde antes de que se instituyera el plan de rutas fijas. Alrededor del 1970, alegadamente, la Unión Número 3395, confrontó problemas y la Unión Número 92 aceptó a noventa y dos (92) de sus noventa y cinco (95) miembros, aumentando significativamente el número de conductores que servían la misma ruta.
Los miembros de la Unión Número 92 aducen que esta situación ocasionó que existieran demasiadas personas sirviendo la misma ruta, de Caguas a Humacao con viraje en Juncos, y que tuvieron que invertir más de $200,000.00 adquiriendo la franquicia de personas que servían dicha ruta. Ante esta situación, alegadamente los miembros de la Unión Número 92 entregaron los permisos obtenidos a la Comisión de Servicio Público.
Alegadamente, un día, el cual no se especifica en los escritos ante nos, los miembros de la Unión Número 92 llegan al Terminal de Caguas, lugar donde trabajan, y se encuentran ante el hecho de que se habían concedido dos (2) espacios en dicho terminal a la Unión Número 3395 para que sirvieran la misma ruta que los miembros de la Unión Número 92 sirven. Aducen que nunca se les había notificado de la existencia de una solicitud para obtener dichos espacios en el Terminal de Caguas, ni se les había permitido expresarse en torno a este asunto, asunto "que afecta su posibilidad de generar ingresos adecuados para sustentar a sus familias".
Los miembros de la Unión Número 92 acudieron a la Comisión y fueron informados que dicho organismo administrativo había emitido una Orden Administrativa el 21 de agosto de 1996, en la que se indicaba que no existía oposición a la solicitud de modificación de ruta y concesión de espacios en el Terminal de Caguas. La Unión Número 92 adujo ante la Comisión que las Reglas de Procedimiento de la Comisión de Servicio Público establecen que, antes de concederse cualquier solicitud de este tipo, era necesario la publicación de edictos informando las particularidades de dicha petición para que las partes afectadas pudieran manifestar su posición. Adujeron, además, que en el caso no existía controversia en torno al hecho de que los edictos no habían sido publicados, por lo cual nadie se enteró de la solicitud, lo que motivó el que nadie se expresara. Ante esta situación, la Comisión concedió una vista.
*802 Los de la Unión Número 92 alegan que no tuvieron claro el alcance o propósito de la vista por lo que no pudieron presentar la evidencia con la que contaban. Luego de celebrada la vista, la Comisión emitió la Resolución y Orden que es objeto de revisión ante este foro. En los apartados 10 al 17 de ésta que se leen como más adelante se ha de indicar, en lo pertinente, se expresa lo siguiente:

"10. Enterados los concesionarios de la Unión Número 92 de que la Orden Administrativa del 21 de agosto de 1996 ordenaba a los concesionarios de la Unión Número 3395 entrar en el terminal del Municipio de Caguas estos levantaron su voz de protesta y dejaron saber de varias maneras que no estaban conformes con la referida Orden Administrativa.

11.La Comisión de Servicio Público, aunque entiende que obró conforme al derecho administrativo vigente, concedió una vista administrativa para que las partes envueltas en la controversia expusieran su punto de vista.

12. Así las cosas el día 10 de diciembre de 1996 se celebró la audiencia pública con el propósito descrito en el inciso anterior.

13. La representación legal de la Unión Número 92 alegó que la Comisión tenía la obligación de publicar ún edicto para notificar al público sobre la modificación de ruta solicitada, antes de emitir la Orden Administrativa del caso de marras.

14. La confusión de la representación legal de la Unión Número 92 se debe a que en la referida Orden Administrativa por error involuntario de este Organismo se indicó en el inciso número 5, que no constaba oposición alguna a la modificación de la ruta propuesta.

15. Si bien es cierto que se cometió error por el Organismo al indicar que no constaba oposición, debemos aplicar el principio de que "un error de hecho no hace derecho" como pretenden demostrar los opositores a este proceso.

16. Los municipios obtienen a través del Departamento de Transportación y Obras Públicas fondos federales para la construcción de terminales de vehículos públicos. Para que dichos fondos sean otorgados, el municipio debe presentar su propuesta y cumplir con todos los requisitos de la "Federal Transportation Administration" (FTA). Dentro de estos requisitos se establece la publicación de edictos y la celebración de vistas públicas que garanticen la participación ciudadana.

17. En caso de la construcción de un nuevo terminal en el municipio, la Comisión de Servicio Público tendrá la facultad de modificar administrativamente esta ruta fija sin la previa publicación de edictos. Entendiéndose que dichos edictos fueron publicados por el propio municipio durante el proceso de solicitud de fondos federales y otorgación de permisos."

En esta orden, la Comisión Administrativa del 21 de agosto de 1996. ratificó su Orden Administrativa de 21 de agosto de 1996. Ordenó, también, a la Unión Número 92 de Caguas a Humacao que acatara el cese y desista, emitido el 19 de octubre de 1995, en el que se prohibe operar desde Caguas a Juncos sin llegar a Humacao. Además, la Comisión enmendó NUNC PRO TUNC su Orden Administrativa del 21 de agosto de 1996, eliminando su inciso cinco, referente a que no existía oposición a la petición de la Unión Número 3395. Inconformes la Unión Número 92, luego de presentada oportuna moción de reconsideración, como hemos expresado, presentó ante este foro recurso de revisión, en el que le imputa a la Comisión haber cometido el siguiente error, que lee como sigue:

"Erró la Comisión de Servicio Público al acceder a una solicitud de ubicación de espacio en terminal y modificación de ruta presentada por la Unión Número 3395 sin seguir el procedimiento obligatorio de notificación mediante la publicación de edictos tal y como lo requiere expresamente el Reglamento de Procedimiento de la Propia Comisión y los imperativos del Debido Proceso de Ley."

m
En esencia, la Unión Número 92 le imputa como error al foro administrativo, el quitarle su propiedad sin la oportunidad de ser oído, es decir, sin el debido procedimiento de ley. Veamos.
*803 Tan pronto como una agencia ejerce su discreción y adopta unas reglas de procedimiento bajo las cuales desea que se hagan sus adjudicaciones se niega a sí mismo el derecho de violar tales reglas. Si la agencia en el curso de sus procedimientos viola sus reglas y con ello causa perjuicio, no puede sostenerse acción alguna tomada a base de tales procedimientos. Hernández García v. J.R.T., 94 D.P.R. 22 (1967). Por otro lado, una agencia administrativa viene obligada a observar estrictamente sus propios reglamentos, no pudiendo quedar a su soberana voluntad el reconocer o no los derechos que ella misma le ha extendido por reglamento a sus empleados. Cotto Guadalupe v. Departamento de Educación, _ D.P.R. _ (1995), 95 J.T.S. 79; García Troncoso v. Administración del Derecho al Trabajo, 108 D.P.R. 53 (1978); Hernández García, supra.
En el presente caso al no seguir la Comisión sus Reglas de Procedimiento que aplican a los procedimientos administrativos y adjudicativos relacionados con la expedición de autorizaciones, reglamentación y fiscalización, aprobadas el 14 de agosto de 1994, con vigencia treinta (30) días después de su aprobación, tuvo como resultado el que dicho organismo administrativo le violó a los miembros de la Unión Número 92 el debido proceso de ley que les garantiza tanto el Art. II, Sección 7, de la Constitución del Estado Libre Asociado de Puerto Rico, como la Enmienda V y la Sección 1 de la Enmienda XIV de la Constitución de los Estados Unidos de América.
En Lucas Marrero v. Enrique Rodríguez, _ D.P.R. _ (1995), 95 J.T.S. 44, pág. 773, nuestro Tribunal Supremo señaló que:
"En Puerto Rico, al igual que en los Estados Unidos, todo ciudadano está cobijado por el manto protector del debido proceso de ley. Tanto la Constitución de Puerto Rico como la Constitución de los Estados Unidos han consagrado el derecho de toda persona a tener un proceso justo y con todas las debidas garantías que ofrece la ley, tanto en el ámbito judicial como en el administrativo. Nos enfrentamos a un principio fundamental de alta jerarquía en el que se garantiza que ninguna persona perderá su libertad o propiedad sin la oportunidad de ser oído. Tal derecho nos protege de las posibles arbitrariedades de los sistemas de justicia. En Puerto Rico se reconoce el derecho y la protección a un debido proceso de ley en toda actuación en la que el Estado intervenga con un ciudadano particular." (Enfasis Nuestro).
En Jaime Feliciano Figueroa v. Julio Tosté Piñero, _ D.P.R. _ (1993), 93 J.T.S. 161, el Tribunal Supremo citando a Rivera Rodríguez & Co. v. Taylor y otros, _ D.P.R. _ (1993), 93 J.T.S. 111, a la luz de Connecticut v. Doehr, 501 U.S., 115 L. Ed. 2d.1, 111 S. Ct. (1991), reitera que en todo procedimiento adversativo el debido proceso de ley debe satisfacer los siguientes requisitos: (1) notificación adecuada del proceso; (2) proceso ante un juez imparcial; (3) oportunidad de ser oído; (4) derecho a contra-interrogar testigos y examinar evidencia presentada en su contra; (5) tener asistencia de abogado; y (6) que la decisión se base en el récord.
El debido proceso de ley, en los procedimientos judiciales exige que los demandados o las personas que puedan ser perjudicadas por dichos procedimientos sean notificados y se les de la oportunidad de ser oídos, lo que incluye una oportunidad de presentar evidencia. Pagán v. Registrador, 62 D.P.R. 594 (1943); Arbona Hnos v. HC Christianson and Co., 26 D.P.R. 284 (1918).
En Rivera Rodríguez v. Stowell, supra, pág. 10931, se dispuso que:
"La sección 7 del Artículo II de la Constitución del Estado Libre Asociado de Puerto Rico, al igual que la Enmiendas V y XIV de la Constitución de los Estados Unidos, garantizan que:
"... ninguna persona será privada de su libertad o de su propiedad sin un debido proceso de ley."
El debido proceso de ley se manifiesta en dos dimensiones distintas: sustantiva y procesal. Bajo el debido proceso sustantivo, los tribunales examinan la validez de una ley, a la luz de los preceptos constitucionales pertinentes, con el propósito de proteger los derechos fundamentales de las personas. Bajo este análisis, el Estado, al aprobar leyes o al realizar alguna actuación, no puede afectar de manera irrazonable, arbitraria o caprichosa los intereses de propiedad o libertad. Rodríguez Rodríguez v. E.L.A., _ D.P.R. _ (1992), 92 J.T.S. 63. Por otro lado, en el debido proceso de ley procesal se le impone al Estado la obligación de garantizar que la interferencia con los intereses de libertad y *804 propiedad del individuo se haga a través de un procedimiento que sea justo y equitativo. López Vives v. Policía de Puerto Rico, 118 D.P.R. 219 (1987).
"...Como principio fundamental del debido proceso se ha consagrado el derecho de toda persona a ser oído antes de ser despojado de algún interés protegido; esta oportunidad de ser oído debe ser en: "a meaningful time and a meaninful manner". Mathews v. Eldridge, 424 U.S. 319 (1976), pág.333, Joint Anti Fascist Refugee Committee v. McGrath, 341 U.S. 123 (1951). Véase: Friendly, Some Kind of Hearing, 123 U. Pa. L. Rev. 1267 (1975). La privación de la libertad o propiedad sin notificación u oportunidad de ser oído se ha considerado siempre ajeno al debido proceso y en ocasiones es fuente de responsabilidad civil, Luger v. Edmonson Oil Co., 339 U.S. 922 (1982); Mullane v. Central Manover Tr. Co., 339 U.S. 306 (1950).
La esencia del debido proceso de ley es que nadie puede ser privado de su propiedad sin la oportunidad de ser oído. JRT v. Hato Rey Psychiatric Hosp., 119 D.P.R. 62, 70 (1987).
IV
Luego de estudiar y examinar tanto el escrito de la Unión Número 92, como el de la Unión Número 3395, el derecho aplicable y por los fundamentos que expondremos a continuación, expedimo's el auto solicitado.
Aunque de ordinario la interpretación administrativa de un estatuto por el organismo encargado de velar por su cumplimiento merece gran respeto y deferencia por los tribunales, esto no significa que tenga credenciales de inmunidad frente a la revisión judicial. Alvarez Cintrón v. Junta de Directores Cond. Villa Caparra Executive, _ D.P.R. _ (1996), 96 J.T.S. 70, pág. 1126.
La Sección 5 de las Reglas de Procedimiento de la Comisión de Servicio Público, supra, trata sobre el trámite de solicitud y/ó petición de autorización o enmienda. ^
La Sección 6 de las mencionadas reglas versa sobre la expedición y publicación de avisos, que en lo pertinente dispone:

"6.01 Iniciado el procedimiento, la Secretaría de la Comisión preparará y remitirá al peticionario o su representante legal autorizado, un aviso para que lo haga publicar en dos periódicos de circulación general en Puerto Rico.

6.02 En el contenido del aviso deberá constar la siguiente información:

a)nombre y dirección postal del peticionario, su representante legalmente autorizado o de su abogado, si lo tuviere.

b) naturaleza de la autorización que se interesa obtener o enmendar, haciendo constar específica y detalladamente los municipios, lugares, territorios o rutas en los cuales interesa rendir sus servicios, número de unidades y cualquier otro dato que la Comisión entienda sea pertinente y necesario.

c) advertencia al efecto de que cualquier persona que tenga interés legítimo en comparecer y ser oída en relación a la solicitud de autorización o de enmienda, deberá presentar en la Secretaria de la Comisión, dentro de los quince (15) días siguientes a la fecha de la última publicación de dicho aviso, una solicitud por escrito y debidamente juramentada para que se le permita intervenir y participar en el procedimiento, haciendo constar los hechos específicos en los que se basa para reclamar su derecho de intervención u oposición y su obligación de notificar a la parte peticionaria."

En la "Moción en Oposición a Petición de Revisión" la Unión Número 3395 aduce que la Unión Número 92 fue notificada de la vista del 7 de noviembre de 1996. De ser ello cierto aún así, no podemos concluir que fueron subsanados los requisitos de la Sección 6 de las Reglas de Procedimiento de la Comisión de Servicio Público, antes transcritos. La mencionada notificación no cumple con ninguno de los requisitos de la sección 6, supra. Por tanto, la Comisión venía obligada a observar estrictamente las Reglas de Procedimiento de la Comisión de Servicio Público, supra, no pudiendo quedar a su soberana voluntad el reconocer o no derechos que ella misma ha extendido por *805 reglamento. Asimismo, tampoco podemos acoger el planteamiento de la Comisión expuesto en su Resolución y Orden en cuanto a que la publicación de los edictos por el municipio para obtener fondos federales y otorgación de permisos para la constmcción de terminales, años atrás, relevó a ésta de publicar edictos a la hora de tramitar una solicitud y/o petición de autorización o enmienda. Si se permitiera esta interpretación le estaríamos violando a las partes interesadas, en nuestro caso a la Unión Número 92, el debido proceso de ley que garantiza la sección 7 de la Constitución del Estado Libre Asociado de Puerto Rico y la sección 1 de la Enmienda XIV de la del Estados Unidos de America.
La esencia del debido proceso de ley es que nadie puede ser privado de su propiedad, sin la oportunidad de ser oído. La Comisión privó a los miembros de la Unión Número 92 de su derecho propietario sin ser oídos; no se les garantizó la esencia del debido proceso de ley que les garantiza la Constitución de Estado Libre Asociado de Puerto Rico en su Artículo II, Sección 7, al igual que las enmiendas V y XIV de la Constitución de los Estados Unidos de América antes mencionadas.
Por los fundamentos expuestos, se expide el auto solicitado y se revoca la Resolución y Orden emitida por la Comisión el 7 de abril de 1977.
Lo pronunció el Tribunal y lo certifica la Secretaria General.
Aida Ileana Oquendo Graulau
Secretaria General
ESCOLIO 98 DTA 30
1. Anejo V, pág. 6, de los recurridos.