Aida Ileana Oquendo Graulau
Secretaria General

# 2000 DTA 94

**TRIBUNAL DE CIRCUITO DE APELACIONES**
**CIRCUITO REGIONAL VI DE CAGUAS/HUMACAO/GUAYAMA**

VICTOR M. GUTIERREZ JIMENEZ
Recurrente

v.

COMISION DE SERVICIO PUBLICO
Recurrida

Núm. KLRA-99-00489

ANGEL LUIS LOPEZ SANTOS
Recurrente

v.

COMISION DE SERVICIO PUBLICO
Recurrida

Núm. KLRA-99-00491

San Juan, Puerto Rico, a 9 de febrero de 2000

Panel integrado por su Presidenta, la Juez Rivera de Martínez
y los Jueces Colón Birriel y Soler Aquino

Colón Birriel, Juez Ponente

## TEXTO COMPLETO DE LA SENTENCIA

### I

Víctor M. Gutiérrez Jiménez (en adelante *"Gutiérrez"*), mediante su recurso Núm. KLRA-99-00489 y Angel Luis López Santos (en adelante *"López"*), mediante su recurso Núm. KLRA-99-00491, recurren por separado de una *"Resolución y Orden"* emitida el 4 de marzo de 1999 por la Comisión de Servicio Público (en adelante *"la Comisión"*) Mediante el referido dictamen se declaró *"Con Lugar"*, la petición de conversión de las autorizaciones para transportar pasajeros mediante paga, a autorizaciones para prestar servicio de taxi en el área del Municipio de Cayey, presentadas por Héctor Santiago Santiago *("Santiago")*, Angel León Gutiérrez *("León")*, Francisco Rivera Torres *("Rivera")*, Miguel A. Torres Dávila *("Torres")* y Jesús Rodríguez Torres *("Rodríguez")*. Se denegaron las presentadas por Gutiérrez y López, por alegadamente haber violado el inciso tres (3), párrafo quinto (5to), de la *"Resolución y Orden"* emitida por la Comisión el 27 de septiembre de 1995.

El 9 de abril de 1999, Gutiérrez y López solicitaron por separado reconsideración de la orden emitida, las que fueron acogidas por la Comisión. Transcurrido el término de 90 días que tenía dicho organismo para

expresarse, no lo hizo, por lo cual éstos presentaron sus respectivas revisiones administrativas.

Mediante nuestras resoluciones de 24 de agosto y 2 de septiembre de 1999, le ordenamos a la Comisión mostrar causa por la cual no debíamos expedir el auto de revisión solicitado y revocar la *"Resolución y Orden"* objeto del recurso.

El 13 y el 18 de octubre de 1999, la Comisión presentó su escrito de mostrar causa. Posteriormente, mediante nuestra *"Resolución"* de 18 de noviembre de 1999, ordenamos la consolidación de los recursos.

Con el beneficio de las comparecencias, de la copia certificada de los expedientes administrativos, resolvemos, no sin antes hacer un breve recuento fáctico y procesal de lo acontecido en el organismo administrativo. Veamos.

## II

El 15 de febrero de 1991 y el 15 de noviembre de 1991, López y Gutiérrez, respectivamente, presentaron por separado, ante la Comisión, una *"Solicitud de Conversión"* a los fines de que sus respectivas autorizaciones para el transporte de pasajeros, fueran convertidas a autorizaciones para servicios de taxis, en el pueblo de Cayey. El 17 de diciembre de 1991, y 18 de febrero de 1992, la Asociación de Dueños de Taxis de Cayey se opuso a las solicitudes de presentadas por Gutiérrez y López.

Luego de celebrada una vista administrativa, la Comisión expidió cuatro (4) autorizaciones para operar taxis en el municipio de Cayey, a Rodríguez, a Torres, y a los recurrentes López y Gutiérrez, según surge de la *"Resolución y Orden"* de 27 de septiembre de 1995.

En la pág. 9 de la resolución se dispuso lo siguiente:

*"Los taxis a ubicarse en el nuevo "stand" serán conducidos por sus propios dueños. Sólo en casos de justa causa o enfermedad severa se permitirá el uso de operador. La Comisión se reserva el derecho de determinar lo que pueda constituir justa causa. El propósito es evitar la especulación con las franquicias que otorga la Comisión."*

El día 16 de diciembre de 1996, nuestro Tribunal Supremo revocó la *"Resolución y Orden"* emitida por la Comisión el 27 de septiembre de 1995, por entender que dicho organismo consideró evidencia extrínseca a la audiencia, para la disposición del caso.

A tenor con la decisión del Tribunal Supremo, la Comisión emitió una *"Resolución y Orden"* el 18 de junio de 1997, mediante la cual ordenó: a) la celebración de una nueva vista pública; b) la actualización del estudio de necesidad y conveniencia que se hiciera en el año 1995, y c) le expidió a López, a Gutiérrez, a Rodríguez y a Torres, permisos provisionales para la prestación de servicios de taxi en el Municipio de Cayey.

El 6 de agosto de 1997, mediante *"Orden Administrativa"*, la Comisión le ordenó a su Oficina de Contabilidad que modificara el estudio del 28 de abril de 1997, realizado a la Asociación de Dueños de Taxi de Cayey, a los fines de incluir a los cuatro (4) taxis que operaban con permisos provisionales en el referido pueblo. Estos taxis operaban, en un principio, con el permiso que se otorgó mediante la *"Resolución y Orden"* del 27 de septiembre de 1995. El permiso fue concedido para que los dueños de los taxis brindaran servicio exclusivamente al Centro Comercial Pérez Hermanos localizado en la Carretera Núm. 1, Km. 56.2, salida 40 a la autopista, en Cayey. A esos taxis destinados a trabajar desde ese centro, se les prohibía hacer un *"stand"* en otro lugar que no fuera ese centro.

No obstante, como hemos mencionado, lo anterior se revocó mediante la *"Resolución y Orden"* emitida por la Comisión el 18 de junio de 1997, concediéndole a los cuatro taxistas un permiso provisional. Este permiso

los autorizaba a operar sus unidades desde cualquier lugar dentro de la municipalidad de Cayey, cumpliendo, desde luego, con los requisitos y condiciones de la *"Resolución y Orden"* del 27 de septiembre de 1995.

El día 14 de enero de 1998, la Comisión celebró una nueva audiencia en la que se discutió el nuevo estudio realizado por el Auditor José A. Maldonado, de la oficina de Contabilidad, el que cubrió desde el 29 de septiembre al 4 de octubre de 1997. A esta audiencia comparecieron los peticionarios Angel López Santos, Angel León Gutiérrez, Víctor M. Gutiérrez y Jesús Rodríguez, representados por el Lcdo. José Abréu Santiago. El peticionario Miguel A. Torres, representado también por el Lcdo. Abréu, no compareció por encontrarse enfermo en los Estados Unidos. Compareció también el peticionario Héctor Santiago y su representante legal, el Lcdo. Edgar Albelo Matos, el cual también representó a la Sucesión de Francisco Rivera Torres. La parte opositora Asociación de Taxis de Cayey compareció asistida del Lcdo. Manuel García Siverio.

A base de la evidencia testifical presentada y admitida en varias vistas, los documentos y estudios efectuados, la Comisión emitió su *"Resolución y Orden"* del 4 de marzo de 1999, objeto del recurso. El referido organismo formuló 24 determinaciones de hechos, entre las que se encuentran las siguientes:

*"8. Posteriormente, el 18 de junio de 1997, la comisión expidió un permiso provisional a cuatro (4) peticionarios para prestar servicio de taxi en Cayey y ordenó el 6 de agosto de 1997, que se ampliara el estudio de marzo de 1997 para incluir estos cuatro (4) taxis provisionales. Dicho estudio se realizó del 29 de septiembre de 1997 al 4 de octubre de 1997.*

*13. Los días 29 de septiembre al 4 de octubre de 1997, se amplió el estudio para evaluar los ingresos de los cuatro (4) taxis provisionales. Dichos taxistas son Angel López, Víctor M. Gutiérrez, Miguel A. Torres y Jesús Rodríguez.*

*14. Los cuatro taxistas están agrupados bajo el nombre de Metro Taxi. Estos brindan el servicio aproximadamente desde las seis de la mañana hasta las seis de la tarde. La demanda por este servicio proviene de personas mayores de edad que hacen sus compras en la Plaza del Mercado y en los comercios adyacentes a la misma.*

*17. Las 18 unidades de taxi operando en Cayey, 14 de ellas con ejercicio de una franquicia regular y 4 con ejercicio de una franquicia provisional, generan en conjunto un ingreso bruto de $9,193.80 dólares.*

*22. El día 30 de octubre de 1997, el auditor José A. Maldonado informó que, durante el estudio, las unidades de Angel L. López y Víctor M. Gutiérrez fueron trabajadas por operadores.*

*24. La necesidad y conveniencia para el Interés Público de lo aquí solicitado quedó establecida a satisfacción de este Organismo."*

A tenor con las Determinaciones de Hecho y Conclusiones de Derecho, la Comisión declaró *"Con Lugar"* la conversión de las autorizaciones para transportar pasajeros mediante paga (VI), a autorizaciones para prestar servicio de taxi en el área de Cayey presentadas por Torres, Rodríguez, Santiago, Angel León Gutiérrez y Francisco Rivera Torres. Denegó las peticiones de López Gutiérrez. En cuanto a éstos, expresó en la pág. 4 de la resolución:

*"Se deniegan las peticiones de los señores Angel López y Víctor M. Gutiérrez por haber violado el inciso 3, párrafo quinto, de la Resolución y orden de 1995, el cual decía que los taxis a ubicarse en el nuevo stand serán conducidos por sus propios dueños. En el estudio realizado por la Comisión, el día 30 de octubre de 1997, reflejó que dichos peticionarios tenían operadores trabajando sus unidades por lo que incumplieron con dicha Resolución y Orden."*

Inconformes, López y Gutiérrez presentaron por separado reconsideración al dictamen. Alegaron, entre

otras cosas, que para el día 30 de octubre de 1997, se encontraban en citas médicas, lo cual hizo necesario que otros operadores trabajaran, en ese día, sus respectivos taxis para que los servicios de los usuarios no se afectaran. En el caso de López, informó que su unidad fue operada por Gilberto Torres Dávila, poseedor para esa fecha de una autorización válida expedida por la Comisión para operar taxi. En el caso de Gutiérrez, su unidad fue operada por José Miguel Orellana Medina quién también poseía para esa fecha una licencia para operar taxi. Además, alegaron que no se estableció violación alguna a la condición para operar los taxis, pues sólo se indicó que las unidades fueron trabajadas por otros operadores sin establecerse si había o no causa justificada para que así fueran operadas; que conforme al debido proceso de ley se les debió haber citado a una nueva audiencia notificándole por escrito las alegaciones del auditor Maldonado, para darles oportunidad de efectuar descubrimiento de prueba y presentar sus argumentos.

Mediante orden del 13 de abril de 1999, archivada en autos y notificada el 20 de abril del 1999, la Comisión acogió las reconsideraciones. Transcurridos noventa (90) días desde que fueron acogidas, sin que la Comisión tomara acción alguna, López y Gutiérrez presentaron, como hemos indicado, sus recursos por separado, los que fueron consolidados por este foro, donde le imputan a la Comisión haber incurrido en los siguiente dos (2) errores:

"1. Erró la Honorable Comisión de Servicio Público al negar al peticionario-recurrente el permiso de taxi solicitado sin existir causa o justificación en ley para ello, violando el debido proceso de ley sustantivo.

2. Erró la Honorable Comisión en negarle el permiso sin habérsele dado notificación de la Querella por escrito de los cargos, negando así al peticionario-recurrente la oportunidad para presentar sus argumentos en contra de las alegaciones en que se basó la Resolución y orden y violando así el debido proceso de Ley Procesal."

### III

De entrada, es menester contestarnos estas dos (2) interrogantes: a) ¿Poseían López y Gutiérrez un interés propietario en los permisos provisionales (franquicia) otorgados por la Comisión para prestar servicios de taxis en el pueblo de Cayey? A nuestro juicio, la respuesta es en la afirmativa. b) Siendo ello así, ¿el procedimiento seguido por la Comisión para desproveerlos de ese interés propietario fue justo y equitativo? Determinamos que no. Veamos.

En *Rivera Santiago v. Secretario de Hacienda,* 119 D.P.R. 273-274 (1987), nuestro Tribunal Supremo expresó: *"El derecho al debido procedimiento de ley, consagrado en la Sec. 7 del Art. II de nuestra Constitución, L.P.R.A. Vol. 1, ed. 1982, pág. 275, preceptivo de que "[n]inguna persona será privada de su libertad o propiedad sin debido proceso de ley", tiene su contraparte y modelo en las enmiendas V y XVI de la Constitución Federal.* ▮ *Sus orígenes se remontan a la Carta Magna."* J. Barron y C.T. Dienes, *Constitutional Law: Principles and Policy,* 2da ed., Virginia, Ed. Michie Company, 1982, pág. 235.

A tono con su concepción, el debido proceso de ley se manifiesta en dos dimensiones distintas, substantiva y procesal. *Loudermill v. Cleveland Bd. of Educ.,* 721 P. 2d 550 (1983). Bajo la primera, los tribunales examinan la validez de la parte substantiva de una ley a la luz de la Constitución. Véase, e.g., *Marina Ind., Inc. v. Brown Boveri Corp.,* 114 D.P.R. 64, 77-86 (1983). La segunda, de ámbito procesal, toma en cuenta las garantías procesales mínimas que el Estado debe proveerle a un individuo al afectarle su vida, propiedad o libertad. R.D. Rotunda, J. E. Nowak y J. N. Young, *Treatise on Constitutional Law: Substance and Procedure,* Minnesota, West Pub. Co. 1986, Sec. 14.6. Su aplicabilidad procesal requiere un interés individual de libertad o propiedad. *Board of Regents v. Roth,* 408 U.S. 564 (1972. Cumplida esta exigencia, entonces hay que determinar cuál es el procedimiento exigido (what process is due). *Loudermill v. Cleveland Bd. of Educ., supra; Morrissey v. Brewer,* 408 U.S. 471, 481 (1972).

La característica medular de este derecho es que el procedimiento que siga el estado sea justo (fair). *López*

*Vives v. Policía de P.R.*, 118 D.P.R. 219 (1987). *"La garantía esencial de la cláusula de debido proceso de ley es que sea justa. El procedimiento debe ser fundamentalmente justo al individuo en la resolución de los hechos y derechos que sirven de base para aquellas acciones gubernamentales que le privan de su vida, libertad o propiedad. Si bien situaciones diferentes pueden imponer diferentes tipos de procedimientos, siempre está el requisito general de que el proceso gubernamental sea justo e imparcial."* (Traducción nuestra.) Rotunda, Nowak y Young, *op. cit.*, Sec. 17.8.

Véase además, *Rivera Rodríguez v. Stowell Taylor*, Opinión del 30 de junio de 1993, **93 J.T.S. 111**, a la pág. 10931.

Por otro lado, las agencias administrativas, en nuestro ordenamiento, tienen capacidad y/o poder de reglamentación y adjudicación de controversias. Una vez éstas han promulgado un reglamento, en aras de limitar su discreción, vienen obligadas a cumplir con sus disposiciones y no puede quedar a su arbitrio reconocer o no los derechos allí contenidos. *Comité de Vecinos v. Junta de Planificación*, Opinión de 19 de marzo de 1999, **99 J.T.S. 32**, a la pág. 734. Una vez adoptado, las agencias no pueden dejar de observarlo bajo el fundamento de que constituye reglamentación de índole directiva, pues ello constituye abuso de discreción. *Torres Arzola v. Policía de Puerto Rico*, 117 D.P.R. 204, 211 (1986).

Por su parte, la sección 2151 de la Ley de Procedimiento Administrativo Uniforme, según enmendada, 3 L. P.R.A. sec. 2151, dispone, en lo pertinente, que en todo procedimiento adjudicativo formal ante una agencia se salvaguardarán los siguientes derechos:

*"(A) Derecho a notificación oportuna de los cargos o querellas o reclamos en contra de una parte;*

*(B) Derecho a presentar evidencia, oportunidad de presentar evidencia y refutar la que ofreció el organismo administrativo;*

*(C) Derecho a una adjudicación imparcial (la decisión tomada por un funcionario imparcial); y*

*(D) Derecho a que la decisión esté basada en el expediente administrativo (basada en la prueba contenida en el expediente, donde se exponen los fundamentos de la misma, incluyendo cuando fuese necesario, Determinaciones de Hecho y Conclusiones de Derecho)."*

Acorde con la Ley de Procedimiento Administrativo Uniforme, un *"Procedimiento administrativo"* significa la formulación de reglas y reglamentos, la adjudicación formal de toda controversia o planteamiento ante la consideración de una agencia, el otorgamiento de licencias y cualquier proceso investigativo que inicie una agencia dentro del ámbito de su autoridad legal. 3 L.P.R.A. sec. 2102 (K).

Mediante la Ley Núm. 109 del 28 de junio de 1962, conocida como la *"Ley de Servicio Público de Puerto Rico"*, la Rama Legislativa delegó con normas amplias el poder de reglamentación que le permitiese a la Comisión el desarrollo y ejecución de la política pública sobre los servicios públicos a recibirse por la ciudadanía en general. 27 L.P.R.A. sec. 1101, et. seq. Se le confiere a la Comisión la facultad para *"adoptar aquellas reglas que sean necesarias y propias para el ejercicio de sus facultades o para el desempeño de sus deberes".* 27 L.P.R.A. sec. 1123.

Los Artículos 45, 46, 48 y 49 de la Ley Núm. 109 del 28 de junio de 1962, *supra*, secciones 1256, 1257, 1258, 1259 y 1260, disponen sobre la práctica y el procedimiento de querellas ante la Comisión; a saber, su trámite, el peso de la prueba y los procedimientos para las audiencias. La Comisión podrá, también, de oficio y mediante la notificación que considere razonable, instituir cualquier investigación similar a las querellas que se presenten a virtud de lo dispuesto en 27 L.P.R.A. sec. 1256.

El Art. IV, Secciones 18.01 a la 24.04 de las Reglas de Procedimiento de la Comisión de Servicio Público, regulan el procedimiento para la presentación y adjudicación de querellas ante la Comisión.

En el Artículo VII, Sección 27.01 de las Reglas de Procedimiento de la Comisión de Servicio Público, *supra*, se establece el procedimiento para la suspensión, enmienda y cancelación de autorizaciones otorgadas por la Comisión. Este artículo lee como sigue:

*"Suspensiones, Enmiendas y Cancelaciones de Autorizaciones*

*27.01- La Comisión podrá suspender, enmendar o cancelar la autorización conferida a una empresa de servicio público mediante aviso y previa vista pública, cuando determine que la empresa ha violado las disposiciones de la ley, los reglamentos de la autorización conferida o de cualquier norma, orden o resolución de la Comisión."*

En el Artículo IV, Sección 18.00, *et. seq.*, de las Reglas de Procedimiento de la Comisión de Servicio Público, *supra*, se establece el procedimiento para la presentación de una querella por violación a las disposiciones del reglamento de la Comisión. El mismo dispone, en lo pertinente como sigue:

*"Presentación*

*18.01- Cualquier persona natural o jurídica, concesionario o agencia gubernamental que se quejase de algún acto u omisión bajo la jurisdicción del organismo, que haya llevado a cabo o se proponga llevar a cabo una compañía de servicio público, porteador por contrato o cualquier persona particular por la violación de su reglamentación, de cualquier requisito o disposición de la Ley de la Comisión o de cualquier regla, podrá presentar ante ésta, ya sea en la secretaría o en la oficina regional más cercana una querella mediante escrito firmado y juramentado ante Notario Público o funcionario de la Comisión que esté autorizado para tomar juramentos."*

La presentación de una querella constituye un aviso suficiente a la parte que alegadamente incurre en la violación a las disposiciones de la Comisión, de que existe un procedimiento en su contra.

Como hemos señalado, la Comisión, en su *"Resolución y Orden"* del 4 de marzo de 1999, declaró *"Con Lugar"* la solicitud de conversión de autorizaciones para transportar pasajeros mediante paga, a autorizaciones para prestar servicio de taxi en el área de Cayey, de varios peticionarios. Las de López y Gutiérrez fueron denegadas por *"haber violado el inciso 3, párrafo quinto, de la resolución y Orden de 1995, el cual expresaba que los taxis a ubicarse en el nuevo "stand" serán conducidos por sus propios dueños."* La denegación surge de la determinación de hecho número veintidós (22) de la *"Resolución y Orden"* de 4 de marzo de 1999, que lee como sigue:

*"22. El día 30 de octubre de 1997, el auditor José A. Maldonado informó que, durante el estudio, las unidades de Angel L. López y Víctor M. Gutiérrez fueron trabajadas por operadores."*

Esta determinación proviene, a su vez, del último de los comentarios generales, que el Auditor José A. Maldonado, como funcionario de la Oficina de Contabilidad de la Comisión, hiciera en su estudio realizado. El mero comentario de una irregularidad en un informe, la presentación formal de una querella y la celebración de la correspondiente vista pública no son la misma cosa.

Como hemos señalado anteriormente, a López y a Gutiérrez no se les notificó de forma adecuada de su alegada violación a la *"Resolución y Orden"* del 27 de septiembre de 1995. El mero hecho de que la Comisión incluyó la alegada violación como una de sus determinaciones de hecho en la *"Resolución y Orden"* del 4 de marzo de 1999, no constituyó la debida notificación del procedimiento en su contra. La Comisión venía obligada a cumplir con el debido proceso de ley y todo lo que ello conlleva, acorde con nuestra Constitución.

41

Venía obligada a cumplir con los derechos que deben salvaguardarse en todo procedimiento adjudicativo formal, conforme las disposiciones del Art. 14 de la Ley de Procedimiento Administrativo, 3 L.P.R.A. sec. 2141.

Cuando a una agencia se le delega el poder de reglamentar (poder cuasi-legislativo) sirve el propósito, entre otros, de facilitar el proceso interno decisional y limitar el alcance de su discreción. *García Cabán v. Universidad de Puerto Rico,* 120 D.P.R. 167, 175 (1987). Por ello, una vez han sido adoptadas, viene obligada a observarlos estrictamente y su cumplimiento no queda subordinado a la voluntad de la agencia, así como tampoco el reconocer o no los derechos que ella misma ha dispuesto previamente en favor de los individuos que acuden ante sí. *García v. Cabán, supra.* Es decir, el cumplimiento para con éstos es mandatorio. *Hernández García v. J.R.T.,* 94 D.P.R. 22, 29 (1967).

De los hechos se desprende que López y Gutiérrez no fueron notificados oportunamente de su alegada violación. No se les concedió la oportunidad de confrontarse con las alegaciones del Auditor Maldonado, vertidas en su estudio, y explicar o rebatir la razón de lo informado por éste respecto al porqué sus respectivas unidades fueron trabajadas por otros operadores; es decir, a presentar evidencia en una vista pública según dispone el Reglamento de la Comisión y la Ley de Procedimiento Administrativo Uniforme. Sus alegadas violaciones no fueron adjudicadas imparcialmente. La decisión de la Comisión no se basó en el expediente y sí en los comentarios del Auditor Maldonado, funcionario de la Comisión.

Reiteradamente, nuestro Tribunal Supremo ha determinado que las conclusiones e interpretaciones de los organismos administrativos especializados merecen gran consideración y respeto por el foro judicial y que la revisión judicial ha de limitarse a determinar si la agencia actuó arbitraria o ilegalmente o en forma tan irrazonable que su actuación constituyó un abuso de su discreción. *Murphy Bernabé v. Tribunal Superior,* 103 D.P.R. 692, 699-700 (1975); *Fuertes v. A.R.P.E.,* Opinión de 17 de diciembre de 1993, **93 J.T.S. 165**, a las págs. 11385-11386.

Sin embargo, esa deferencia no significa que hayamos renunciado nuestra función revisora en instancias apropiadas y meritorias, pues en *"el supuesto de que la agencia administrativa hubiese cometido algún error en la aplicación de la ley, esa actuación no seria válida". Fuertes v. A.R.P.E., supra; Del Rey v. J.A.C.L.,* 107 D.P. R. 348, 355 (1978).

Por lo antes expuesto, determinamos que se cometió el segundo error señalado consistente en que la Comisión no les notificó por escrito de los cargos, privándoles de la oportunidad de presentar sus argumentos para rebatir las alegaciones del Auditor de la Comisión, violándoles así el debido proceso de ley.

En consideración a lo anteriormente expuesto, resulta inoficioso entrar a discutir el primer señalamiento de error. En mérito a lo cual, expedimos el auto solicitado y revocamos la *"Resolución y Orden"* del 4 de marzo de 1999. Remitimos el caso a la agencia administrativa para procedimientos consistentes con lo aquí resuelto.

Notifíquese inmediatamente.

Lo pronunció el Tribunal y lo certifica la señora Secretaria General.

Aida Ileana Oquendo Graulau
Secretaria General